NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HORIZON GROUP USA, INC., | Case No: 18-11548 (SDW) (CLW) |
| Plaintiff, | |
| v. | **OPINION** |
| TRI-COASTAL DESIGN GROUP, INC., | |
| Defendant. | February 27, 2019 |

**WIGENTON,** District Judge.

Before this Court is Defendant Tri-Coastal Design Group, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Horizon Group USA, Inc.'s ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated below, Defendant's motion is **DENIED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a leading provider of crafts and craft activity kits. (Am. Compl. ¶ 13, ECF No. 6.) Among its most successful products are its branded, do-it-yourself beauty kits, such as the STMT Bath Bomb Kit,[1] the STMT Crystal Soaps Kit,[2] and the Mine 2 Design Layered Lip

---

[1] The STMT Bath Bomb Kit is comprised of: "(1) one aluminum bath bomb mold; (2) dried roses; (3) coconut oil; (4) baking soda; (5) mica powder packets; (6) five bath bomb mixtures; (7) glitter; (8) two essential oils; and (9) instructions[.]" (*Id.* ¶ 23.) This configuration "enables the consumer to create five multicolored, scented bath bombs of a specific size." (*Id.* ¶ 24.) The kit is "packaged in a rectangular box, with the front face of the packaging opening outwardly and hinged at the top edge with inserts that fit into slots to secure the front face when closed." (*Id.* ¶ 25.)

Lab[3] (collectively, the "DIY Beauty Kits"). (*Id.* ¶¶ 20, 22, 30, 38.) Plaintiff asserts that the configuration of each of the DIY Beauty Kits, coupled with their unique packaging and layout of components, constitute three protectible trade dresses. (*Id.* ¶¶ 26, 34, 42.)

Plaintiff commenced this action on July 11, 2018, alleging that Defendant is "advertising, marketing, promoting, offering for sale and selling" bath bomb, crystal soaps, and lip balm kits that "bear[] trade dress that are closely and confusingly similar" to the trade dress of the DIY Beauty Kits. (*Id.* ¶ 55; *see generally* Compl., ECF No. 1.) Plaintiff further alleges that Defendant obtained samples of and copied Plaintiff's products to sell infringing products at lower prices. (Am. Compl. ¶¶ 70-77.) On September 17, 2018, Plaintiff filed a six-count Amended Complaint alleging federal trade dress infringement under 15 U.S.C. § 1125(a) for each of the three DIY Beauty Kits (Counts One to Three); federal unfair competition under 15 U.S.C. § 1125(a) (Count Four); unfair competition under N.J. Stat. Ann § 56:4-1 (Count Five); and unfair competition under New Jersey common law (Count Six). (*See generally id.*) On September 28, 2018, Defendant filed the instant Motion to Dismiss. (ECF No. 8.) Plaintiff opposed the motion on November 19, 2018, and Defendant replied on December 4, 2018. (ECF Nos. 15-16.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "requires more than labels and

---

[2] The STMT Crystal Soaps Kit is comprised of: "(1) three soap cubes; (2) one mold; (3) glitter packet; (4) four color droppers; (5) one stirrer stick; and (6) instructions[.]" (*Id.* ¶ 31.) This configuration "enables the consumer to create eight glittery gemstone shaped soaps of a specific size." (*Id.* ¶ 32.) The kit is "packaged in a rectangular box, with the front face of the packaging opening outwardly and hinged at the top edge with inserts that fit into slots to secure the front face when closed." (*Id.* ¶ 33.)

[3] The Mine 2 Design Layered Lip Lab is comprised of: "(1) one wax base; (2) one bag of wax chips; (3) one measuring cup; (4) one mixing spoon; (5) one spatula; (6) sticker labels; (7) three fruity flavors; (8) five lip balm containers; and (9) instructions[.]" (*Id.* ¶ 39.) This configuration "enables the consumer to create five customized lip balms." (*Id.* ¶ 40.) The kit is "packaged in a unique briefcase-shaped box with a top cover and top handle[.]" (*Id.* ¶ 41.)

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

Section 43 of the Lanham Act creates a federal cause of action for trade dress infringement. 15 U.S.C. § 1125(a); *see also Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 496 (D.N.J. 2014). Federal trade dress protection "extends to the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or

even particular sales techniques." *Euro Pro Corp. v. Tristar Prods., Inc.,* 172 F. Supp. 2d 567, 572 (D.N.J. 2001) (internal quotation marks omitted) (citing *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1439 (3d Cir. 1994)). "The purpose of [such] protection . . . is to 'secure the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.'" *Shire US Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)).

To state a claim for trade dress infringement, a complaint must set forth facts sufficient to support the inference that "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007) (citing *Shire US Inc.*, 329 F.3d at 353). Additionally, the plaintiff must "articulat[e] the specific elements which comprise its distinct dress." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 309 (3d Cir. 2014) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

According to the Amended Complaint, the DIY Beauty Kits' trade dresses are comprised of their contents, layout, and packaging.[4] (Am. Compl. ¶¶ 89, 101, 113.) Bearing that in mind, Plaintiff has pled sufficient facts to satisfy the first element of its infringement claims, namely that the DIY Beauty Kits' configurations are non-functional. (*Id.* ¶¶ 28, 36, 44). Defendant

---

[4] This Court notes the "consistent overall look" standard, which applies to a "series or line of products," is inapplicable here because Plaintiff is alleging trade dress infringement of "three discrete products." (*See* Pl.'s Opp'n Br. 14, ECF No. 15); *see also Kee Action Sports LLC v. Valken Inc.*, No. 12-6069, 2013 WL 6633439, at *4-5 (D.N.J. Dec. 17, 2013) (explaining that the more stringent "recognizable and consistent overall look" standard adopted in *Rose Art Indus., Inc. v. Swanson*, 235 F. 3d 165, 172 (3d Cir. 2000) was not relevant because the plaintiff was seeking trade dress protection for a single product and not an entire line of products).

argues that parts of the alleged trade dresses are functional, and refers specifically to STMT-branded products' "self-locking" boxes or Mine 2 Design Layered Lip Lab's "briefcase-shaped box with a top cover and top handle[.]" (Def.'s Moving Br. 6, 9, 15-16, ECF No. 8.) However, "one may have a protectible interest in a combination of features or elements that includes one or more functional features." *Am. Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136, 1143 (3d Cir. 1986). Indeed, determining whether a trade dress is protectible "requires that all of the features be considered together, not separately." *Id.* at 1141; *see also Euro Pro Corp.*, 172 F. Supp. 2d at 572 ("[E]ven if no particular individual component or feature would be considered distinctive in isolation, a product design may still be protectable."). Thus, Plaintiff need not establish that every component of its trade dress is non-functional to state a claim for infringement.

Plaintiff has also satisfied the second element of its trade dress claims because it has adequately alleged that the DIY Beauty Kits' trade dresses are inherently distinctive or have acquired secondary meaning. (Am. Compl. ¶¶ 89, 101, 113.) Secondary meaning in product configuration can be established through, *inter alia*,

> (1) plaintiff's advertising expenditures, measured primarily with regard to those advertisements which highlight the supposedly distinctive, identifying feature . . . ; (2) consumer surveys linking the distinctive product configuration to a particular, single source (although the identity of the source need not be known); and (3) length and exclusivity of use.

*Duraco Prods., Inc.*, 40 F.3d at 1452; *see also Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (providing a non-exclusive list of factors that may be considered). Here, the Amended Complaint alleges that the DIY Beauty Kits are "prominently depicted" in virtually all advertisements and promotions because they "serve[] as such . . . strong source identifier[s]." (Am. Compl. ¶¶ 29, 37, 45.) The pleadings also detail the

5

ways in which Plaintiff and major retailers promote the DIY Beauty Kits through print and online advertisements, mailers, trade shows, and so forth. (*Id.* ¶¶ 46-47, 51.) Furthermore, Plaintiff alleges that it has "expended approximately $2 million in promoting its products last year alone, with approximately $250,000 for the STMT brand." (*Id.* ¶ 50.) Accepting these facts as true, Plaintiff has sufficiently pled the second element to each of its trade dress infringement claims. *See, e.g.*, *Profoot, Inc. v. MSD Consumer Care, Inc.*, No. 11-7079, 2012 WL 1231984, at *3 (D.N.J. Apr. 12, 2012).

Lastly, Plaintiff has sufficiently pled that Defendant's alleged infringing products "are likely to cause confusion, mistake and deception among the consuming public as to the source and origin of Defendant's goods[.]" (Am. Compl. ¶ 82.) When evaluating the third element of trade dress infringement, courts consider the following list of ten factors, known as the *Lapp* factors:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
> (5) the intent of the defendant in adopting the mark;
> (6) the evidence of actual confusion;
> (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
> (8) the extent to which the targets of the parties' sales efforts are the same;
> (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;
> (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215 (3d Cir. 2000)). The list is non-exhaustive, and none of the factors are determinative in the analysis. *Id.* (citation omitted). In the instant matter, Plaintiff alleges that "Defendant's infringing products are near exact reproductions of [Plaintiff's] products, laying out all the copied elements similarly" and "lift[ing] every single element" of the DIY Beauty Kits' trade dresses. (Am. Compl. ¶¶ 68-69; *see also id.* ¶¶ 92-93, 104-05, 116-17.) According to Plaintiff, its DIY Beauty Kits are "[a]mong [its] most successful products[.]" (*Id.* ¶ 20.) Additionally, both Plaintiff and Defendant's kits are "targeted and promoted to the same classes of consumers" that are "acutely vulnerable to confusion" because the kits at issue are "relatively low-cost impulse purchases[.]" (*Id.* ¶¶ 79-80.) These allegations are sufficient to survive a motion to dismiss. *See, e.g.*, *Lorillard Techs., Inc. v. NJ Ale House, LCC*, No. 14-2044, 2015 WL 1197531, at *9 (D.N.J. Mar. 13, 2015) (denying a motion to dismiss where the plaintiff alleged facts addressing six of the ten *Lapp* factors).[5]

Based on the foregoing, Plaintiff has pled sufficient facts to maintain its claims of trade dress infringement. Therefore, Defendant's Motion to Dismiss Counts One, Two, and Three of the Amended Complaint is denied.[6]

---

[5] Whether Plaintiff can ultimately establish likelihood of confusion is a question of fact that is not properly before the Court at this stage of litigation. *Lorillard Techs., Inc.*, 2015 WL 1197531, at *9 (referring to the likelihood of confusion analysis as a "fact-laden inquiry that is more appropriately undertaken at the summary judgment stage"). As such, a side-by-side comparison of the products, (Def.'s Reply Br. 9-11, ECF No. 16), would be premature.

[6] On a Rule 12(b)(6) motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005). Because Defendant does not address Plaintiff's unfair competition claim (Count Four) in its moving brief, and only refers to it in passing in its reply brief, the motion is denied as to Count Four. Similarly, Defendant requests for the first time in its reply that this Court *sua sponte* dismiss Plaintiff's state and common law claims (Counts Five and Six) "in the event" that the federal claims are dismissed. Because Plaintiff's federal claims are not being dismissed, Defendant's request to dismiss Counts Five and Six is also denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. An appropriate Order follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:  Cathy L. Waldor, U.S.M.J.
  Parties